**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RITCHEY METALS COMPANY, INC., | ) | |
| | ) | Civil Action No. 19-900 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| JAMES REYNOLDS *and* | ) | |
| EASTERN ALLOYS INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

### I. MEMORANDUM

On July 25, 2019, Plaintiff Ritchey Metals Company, Inc. ("Plaintiff" or "Ritchey Metals") filed a Complaint (hereinafter "Complaint," Doc. 1) against Defendants James Reynolds ("Reynolds"), a former employee, and Eastern Alloys, Inc. ("Eastern Alloys"), a direct competitor, (collectively, "Defendants"), alleging misuse of confidential and proprietary business information, including trade secrets. On September 30, 2019, Defendants filed a Motion to Dismiss Complaint or Alternatively to Transfer Case, ("Motion to Dismiss," Doc. 10), arguing this Court lacks personal jurisdiction over Defendants and venue is improper. On November 11, 2019, Plaintiff filed a Brief in Opposition to the Motion to Dismiss, ("Response," Doc. 18), as well as a Motion for Leave to Conduct Jurisdictional Discovery, ("Discovery Motion," Doc. 19). Defendants opposed the Discovery Motion on November 15, 2019, (Doc. 24), and filed a Reply to Plaintiff's Response shortly thereafter, ("Reply," Doc. 28).

After consideration of all briefing, Defendant's Motion to Dismiss will be denied, and Plaintiff's Discovery Motion will be denied as moot.

A.     **BACKGROUND**

Ritchey Metals is a family-owned business specializing in providing "customers with a highly customized casting process utilizing a propriety blend of metals" that is located in this District.  (Complaint at ¶¶ 1, 7; Response at 1–2; Doc. 18-1 at ¶ 3.)  Reynolds worked for Ritchey Metals for approximately 40 years, rising to the position of Vice President and Chief Financial Officer, and "was an integral part of the strategic direction of Ritchey Metals." (Complaint at ¶¶ 10, 11.)  In these roles, Reynolds had "unrestricted access" confidential and proprietary information, including customer lists and pricing; product formulas; supplier lists for materials; manufacturing processes; and executive-level short- and long-term business plans. (Id. at ¶ 14.)

In February of 2019, "Reynolds confirmed he was terminating his employment with Ritchey Metals."  (Id. at ¶ 18.)  Ritchey Metals alleges that "[i]mmediately following his separation of employment" Reynolds began to provide "sales and customer retention services" for Eastern Alloys.  (Id. at ¶ 20.)  Eastern Alloys is a competitor of Ritchey Metals also engaged in alloying operations.  (Id. at ¶ 9.)

Ritchey Metals alleges that Reynolds, in his new role at Eastern Alloys, directly solicited Ritchey Metals's customers, solicited product orders, and used Ritchey Metals propriety information, causing Ritchey Metals to send a letter to Defendants asking them to cease these actions.  (Id. at ¶¶ 23–25.)  Ritchey Metals avers Defendants nonetheless continued to solicit business from its customers "using proprietary information developed for those customers while [Reynolds was] employed in senior management with Ritchey Metals."  (Id. at ¶ 29.)  In June of 2019, a Ritchey Metals customer advised the company that "Reynolds's position with Eastern Alloys was copying and recreating all the production processes, shapes, and product specs from

2

Ritchey Metals for Eastern Alloys so that Eastern can offer Ritchey Metals material within one year." (Id. at 30.)

Defendants' Motion to Dismiss does not specifically take issue with these core allegations in the Complaint. Rather, Defendants point out that Eastern Alloys is a New York corporation, and that their employee, Reynolds, has a "home base" at their office in Maybrook, New York. (Motion to Dismiss at 4.) Defendants elaborate in their supporting brief, stating this Court can exercise neither general nor specific jurisdiction because neither Defendant has material ties to the Commonwealth of Pennsylvania during the relevant time period. (Memorandum of Law in Support of Motion to Dismiss of Alternatively Transfer Case, "Motion to Dismiss Brief," Doc. 11 at 6.) In arguing against the exercise of general jurisdiction, Defendants aver Ritchey Metals "does not even attempt to allege in the Complaint that either defendant has any connection to the Commonwealth of Pennsylvania."[1] (Id. at 11.)

Defendants also contend specific personal jurisdiction does not lie because no claim by Ritchey Metals "'arises from or relates to conduct purposely directed at the forum state.'" (Motion to Dismiss Brief at 12 (quoting Kehm Oil Co. v. Texaco, Inc., 537 F.3d 290, 300 (3d Cir. 2008)).) According to Defendants, "the alleged wrong complained of by Plaintiff is conduct directed towards Plaintiff's customers and suppliers, none of which are alleged to be located in this district." (Id. at 13.) Thus, Defendants argue that examination of the relationship between the Defendants, this forum, and Ritchey Metals's claims reveals a lack of minimum contacts, because Defendants themselves have not formed any substantial connection with Pennsylvania by their suit-related conduct. (Id. at 12 (citing Walden v. Fiore, 571 U.S. 277, 284 (2014)).)

---

[1] In its Response, Ritchey Metals concedes that there is not enough information in the record to support an exercise of general jurisdiction. (Response at 13–14.) The Court agrees, but because it holds that there is specific personal jurisdiction, this issue will not be addressed further.

Finally, Defendants say this Court's exercise of jurisdiction over them would be fundamentally unfair.  (Motion to Dismiss Brief at 8.)

In its Response, Ritchey Metals contends that its pleading establishes that it is proper for this Court to exercise specific jurisdiction over both Defendants.  Specifically, Ritchey Metals directs the Court to the Supreme Court's decision in Calder v. Jones, and urges that, where a plaintiff brings an intentional tort claim and demonstrates that a defendant's tortious conduct is "expressly aimed at" the forum state, personal jurisdiction will lie.  (Response at 10 (citing 465 U.S. 783 (1984)).)  Ritchey Metals avers that its core allegations and claims of Defendants purposeful, intentional, and ongoing misappropriation of its confidential information and trade secrets is sufficient under this standard.  (Response at 10–11.)

In their Reply, Defendants turn once more to Walden, and argue that neither Defendant has engaged in any suit-related conduct oriented towards the forum state.  (Reply at 6.)  Rather, according to Defendants, Ritchey Metals has merely alleged that conduct was directed at the forum because Ritchey Metals is located here and was injured.  (Id. at 7.)  Therefore, Ritchey Metals has failed to demonstrate either Defendant has sufficient contacts with Pennsylvania to satisfy due process.  (Id. at 8.)

**B.    ANALYSIS**

The parties agree that Pennsylvania permits this Court to exercise personal jurisdiction over non-residents within the bounds of Constitutional due process.  (Motion to Dismiss Brief at 8; Response at 7.)  Due process requires that non-resident defendants have "'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316

(1945) (internal quotation marks omitted) (alteration original)).  With respect to a defendant's

contacts with the forum, the court should ask first whether the defendant "purposefully directed"

its activities at the forum, and second, whether the plaintiff's claims "arise out of or relate to" at

least one of those activities.  O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d

Cir. 2007) (first quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985); then

quoting Helicopteros, 466 U.S. at 414).  It is the contacts the "defendant himself" makes with the

forum are critical.  Walden, 571 U.S. at 284.

 Also relevant here, in IMO Industries, Inc. v. Kiekert AG, the Court of Appeals for the

Third Circuit applied the principles of Calder to business torts and laid out a three-prong "effects

test" for specific personal jurisdiction:

> (1) The defendants committed an intentional tort;
> (2) The plaintiff felt the brunt of the harm in the forum such that
> the forum can be said to be the focal point of the harm suffered by
> the plaintiff as a result of that tort;
> (3) The defendant expressly aimed his tortious conduct at the
> forum such that the forum can be said to be the focal point of the
> tortious activity.

155 F.3d 254, 265–66 (3d Cir. 1998).  With respect to the third prong, "the plaintiff must show

that the defendants knew that the plaintiff would suffer the brunt of the harm caused by the

tortious conduct in the forum, and point to specific activity indicating that the defendant

expressly aimed its tortious conduct at the forum."  Id. at 266.  At this stage, Ritchey Metals need

only make a *prima facie* showing of personal jurisdiction and is "entitled to have its allegations

taken as true and all factual disputes drawn in its favor."  Miller Yacht Sales, Inc. v. Smith, 384

F.3d 93, 97 (3d Cir. 2004).

 Keeping all of the above in mind, the Court finds Ritchey Metals has made a *prima facie*

showing of personal jurisdiction as to both Defendants at this juncture.  Defendants contend that

"the Complaint is devoid of any allegations as to what specific events and circumstances took place in the Commonwealth of Pennsylvania, nor is there any allegation that Eastern has any connection with the Commonwealth of Pennsylvania at all or Reynolds has any connection subsequent to his employment with Plaintiff."  (Motion to Dismiss Brief at 2; see also Motion to Dismiss at 10 (Declaration of Eastern Alloy's President that "it appears to me that none of the actions alleged in the Complaint took place in Pennsylvania.").)

These assertions by Defendants are belied by Ritchey Metals's allegations and the undisputed facts contained in the declarations submitted by both parties.  Ritchey Metals has alleged that both Defendants maintain other contacts with the forum.  With respect to Reynolds, Ritchey Metals attached to its Response the Declaration of Wendy Renzi, its Human Resources Director, in which she verifies that during his approximately forty-year tenure with the company, Reynolds reported a home address in Canonsburg, PA, which is in this District.  (Doc. 18-2 at ¶ 7.)  Additionally, Reynolds had all his paychecks, tax documents, and other materials from Ritchey Metals sent to the Canonsburg address.  (Id. at ¶ 8.)

And while Eastern Alloys is dismissive of the Declaration of Stephen Ritchey, President of Ritchey Metals—in which he swears to his belief that Eastern Alloys has current contacts and customers in Pennsylvania and is soliciting others, (Doc. 18-1 at ¶¶ 11–13)—its own President admits that Eastern Alloys has customers in Pennsylvania.  (Motion to Dismiss at 5 (para. 7).)  Moreover, the Court has confirmed that Eastern Alloy's website lists Western Pennsylvania "as one of its sales territories with a designated sales person." (Response at 5.)

With regard to contacts "arising out of" or "related to" to the claims in this case, Defendants' representations appear to be willfully blind to the core wrongful act alleged by Ritchey Metals: *By way of his residency in Pennsylvania, Reynolds gained access to Ritchey*

6

*Metals's trust, and in turn, its propriety information and trade secrets*.  Reynolds purposefully availed himself of the privileges and responsibilities of this Commonwealth for the vast majority of his career, during which time he misappropriated proprietary information to provide it to a direct competitor for mutual financial gain.  That misappropriation originated in this District and it is the basis for all seven counts in the Complaint.  This Court's power to exercise jurisdiction over Reynolds for this conduct is not obviated a month after a change in job and movement to a new State.

With respect to Eastern, Ritchey Metals alleges it hired Reynolds to provide "sales and customer retention services," which consists of "copy and recreating" Ritchey Metals's proprietary processes so that they can be offered to Eastern Alloys's customers. (Complaint at ¶¶ 20, 30.)  The two companies compete directly, and Reynolds began providing these services to Eastern Alloys "immediately following" his separation Ritchey Metals.  In doing so, Ritchey Metals avers Eastern Alloys "conspired to misappropriate Richey Metals' trade secrets" and has "induced, condoned, intentionally supported, and financially benefitted from Reynolds' misappropriation."  (Id. at ¶¶ 74, 87)  Ritchey Metals alleges Eastern Alloys retained Reynolds and continues to use the information he provided in order "to increase its competitive advantage in the marketplace and/or increase its profits."  (Id. at ¶ 73.)

In support of its position that these contacts give rise to specific jurisdiction, Ritchey Metals cites Vizant Technologies v. Whitchurch.  97 F. Supp. 3d 618 (E.D. Pa. 2015).  In Vizant, plaintiff-company sued two former employees for conduct following their separation from the company, including misappropriation of confidential information.  Id. at 626.  The former employees published plaintiff-company's confidential information online and disclosed it to a competitor.  Id.  After plaintiff-company brought suit, the former employees asserted the

Pennsylvania court's inability to exercise personal jurisdiction over them, arguing a lack of minimum contacts because they were residents of Georgia. Id. at 631–32.

The district court disagreed, finding plaintiff-company had made a sufficient showing because the former employees' misappropriation was "purposefully directed" at Pennsylvania because it was calculated to harm the plaintiff-company located in the forum. (Id. at 631.) Plaintiff-company's claim was based on this conduct, and thus "arose out of" the former employee's contacts with the forum. (Id.); see also Helicopteros, 466 U.S. at 414. The former employees reasonably could have anticipated being haled into court in Pennsylvania for such conduct, and thus the exercise of jurisdiction comported with fair play and substantial justice. (Id. at 632); see also Helicopteros, 466 U.S. at 414.

The Court finds the reasoning in Vizant, and other similar cases, sound, and applies it here to the same result.[2] See also PPG Industries, Inc. v. Jiangsu Tie Mao Glass Co., Ltd., 2020 WL 1526940 (W.D. Pa. Mar. 31, 2020) (Hornak, C.J.); Eddie Kane Steel Products, Inc. v. Alabama Plate Cutting Co., 2019 WL 3281623 (D.N.J. July 19, 2019). Further, factual differences with Vizant render the basis for jurisdiction over Reynolds even stronger. First, while the former employee defendants in Vizant were residents in Georgia, Reynolds was resident of this District at the time he came into possession of the information he is alleged to have misappropriated. And second, Reynolds worked for Ritchey Metals exclusively for forty years—an entire career.

As for Eastern Alloys, the immediate hiring of Reynolds after his separation from Ritchey Metals—and thus Eastern Alloys's immediate and continuous misuse of Ritchey

---

[2] The Vizant court found plaintiff-company's allegations sufficient under the "traditional analysis" of minimum contacts as well as under Calder and IMO Indus., Inc.. See Vizant, 97 F. Supp. 3d at 631–32. Either framework likewise supports this Court's exercise of jurisdiction over Reynolds.

Metals's confidential information and trade secrets—is conduct "expressly aimed at" this forum. Calder, 465 U.S. at 789; Eddie Kane, 2019 WL 3281623, at *6 ("Trade secrets are possessed where the owner of the trade secret is a resident."); (see also Complaint at ¶ 54 ("Eastern Alloys intentionally and knowingly sought to profit and did profit from Reynolds' breach of his fiduciary duties.").)  The reasonable inferences drawn from these allegations is that Eastern Alloys's improper conduct began while Reynolds worked for Ritchey Metals and resided in this Commonwealth, or very shortly thereafter.  Eastern Alloys's intentional, allegedly tortious conduct, was designed to diminish Ritchey Metals's customer base and profits, and to increase its own, and each time it is alleged to have used Ritchey Metals's information to solicit its customers, that conduct is "expressly aimed at" Pennsylvania.  (See also Plaintiff's Memorandum of Law in Support of Motion for Leave to Conduct Jurisdictional Discovery, Doc. 20, at 4 ("Eastern hired Reynolds in February of 2019 for the purpose of gaining access to Ritchey Metals' confidential, business, and proprietary information in an effort to capture Ritchey Metals' market share and steal Ritchey Metals' customers.").)

These allegations are enough for the Court to exercise personal jurisdiction under IMO Indus., Inc. 155 F.3d at 265–66.  Indeed, it is hard to imagine any other forum being considered the "focal point" of the harms Defendants are alleged to have committed in the Complaint.

In lieu of providing counter authority to Vizant, Defendants attempts to distinguish it and the other similar cases as involving "direct actions for malicious harm specifically directed toward the plaintiff in Pennsylvania." (Reply at 7.)  These efforts are unavailing, as in the Court's view, Ritchey Metals alleges Defendants did just that.

## II. <u>ORDER</u>

Defendants' Motion to Dismiss, (Doc. 10), is **DENIED**, and Plaintiff's Motion for Discovery, (Doc. 19), is **DENIED AS MOOT**.  Defendants' responsive pleading shall be filed within 14 days of this Order.

IT IS SO ORDERED.

June 25, 2020                                    s\Cathy Bissoon
                                                 Cathy Bissoon
                                                 United States District Judge

cc (via ECF email notification):

All Counsel of Record